**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 08-cv-01599-CMA-KMT
(Consolidated with 08-cv-02536-CMA-KMT; 09-cv-00662-CMA-KMT;
09-cv-00667-CMA-KMT; 09-cv-00754-CMA; and 09-cv-00961-CMA)

DANA COOPER,

      Plaintiff,

v.

SGT. RHONDA BELCHER,
LT. BERNADETTE SCOTT,
SGT. DODGE,
ASSOCIATE WARDEN CAROL SOARES,
WARDEN KEVIN MILYARD,
CORRECTIONS OFFICER HARDY,
LLOYD WAIDE,
CORRECTIONS OFFICER NICHOLAS HANEY,
CORRECTIONS OFFICER STARNER,
LT. CARPENTER,
CORRECTIONS OFFICER UMMEL,
CAPTAIN MISTY LOGAN,
SGT. MARIE LEIBA,
LT. STEVEN MAY,
MICHAEL NEGLEY,
EDELEN,
DONALD CANFIELD,
CORRECTIONS OFFICER GOMEZ,
CORRECTIONS OFFICER JENKINS,
MANNING,
BRIAN WEBSTER,
FORTUNATO,
BEVERLY DOWIS,
CHARLENE LARSON,
JOHN CHAPDELAINE, and
LT. ALLEN HARMS

      Defendants.

**ORDER GRANTING MOTIONS TO DISMISS**, **DISMISSING DEFENDANTS MARIE LEIBA AND BRIAN WEBSTER FOR LACK OF SERVICE, DENYING VARIOUS OUTSTANDING MOTIONS AS MOOT, AND DISMISSING OTHER SIMILAR ACTIONS**

This matter is before the Court on Defendants' two Motions to Dismiss (Doc. ## 125 and 145). The first was filed by Defendants Sgt. Belcher, Lt. Scott, Sgt. Dodge, Associate Warden Soares, Warden Milyard, Corrections Officer Hardy, Major Waide, Corrections Officer Haney, Corrections Officer Starner, Lt. Carpenter, Corrections Officer Ummel, Capt. Logan, Lt. May, Capt. Negley, Edelen, Canfield, Corrections Officer Gomez, Corrections Officer Jenkins, and Case Manager Manning. The second Motion to Dismiss was filed by Defendants Fortunato, Dowis, Larson, Chapdelaine, and Harms.[1] For the reasons set forth herein, Defendants' Motions to Dismiss are granted.

This matter is also before the Court on Plaintiff's Motion for Permission to Proceed (Doc. # 163), Motion to Proceed (Doc. # 168), Motion for Permission to Proceed in New Filing "Now" Submitted (Doc. # 177), Motion for Permission to Proceed in Dana Cooper v. C/O Archuletta et. al. (Doc. # 180), Motion (Doc. # 181), Motion to Proceed in Dana Cooper v. Sgt. Roberts (Doc. # 183), Motion to Proceed in Dana Cooper v. C/O Archuletta (Doc. # 184), Motion for Permission to Proceed in Cooper v. Lt. Burke, et. al. (Doc. # 186), Motion/Request for Court Order for Legal Photo Copies (Doc. # 188), Request for Court Order/Minute Order for Defendants Webster & Leiba to

---

[1] Unlike the other Defendants, Defendants Marie Leiba and Brian Webster are no longer employed by the Colorado Department of Corrections and did not file a dispositive motion.

be Served (Doc. # 189), Motion to Proceed in Dana Cooper v. Marie Leiba and Brian Webster (Doc. # 191), Motion to Proceed in Dana Cooper v. C/O L. Vigil (Doc. # 192), Motion to Proceed in Dana Cooper v. Sgt. C. Pool and Corrections Officer R. Cooper (Doc. # 194),  Motion to Proceed in Dana Cooper v. Lt. Dale Burke, Lt. J. Pacheco & Case Manager Carmen Estrada (Doc. # 195), and Motion to Proceed in Dana Cooper v. Lt. Dale Burke, Lt. J. Pacheco & Case Manager Carmen Estrada (Doc. # 196), all of which are denied.

## I.  BACKGROUND

Defendants are all employees of the Colorado Department of Corrections ("CDOC") at Sterling Correctional Facility ("Sterling"), where *pro se* prisoner Plaintiff Dana Cooper used to be incarcerated.[2]  This Consolidated Action consists of six separate 42 U.S.C. § 1983 lawsuits (the "Sterling Actions") filed by Plaintiff over the course of nine months, from July 29, 2008, through April 27, 2009, while a prisoner at Sterling, prior to being transferred to Colorado State Penitentiary.  Each lawsuit stems from Defendants' alleged violations of Plaintiff's constitutional rights under the First, Fourth, Eighth, and Fourteenth amendments.  In support of Plaintiff's constitutional claims, Plaintiff contends that the above-named Defendants engaged in various acts of retaliatory conduct, including sexual assault and molestation, in retaliation for Plaintiff's filing, or thwarted attempts to file, various grievances and/or lawsuits against

---

[2]  Plaintiff is now incarcerated at Colorado State Penitentiary.  All the alleged conduct in the Consolidated Action occurred at the Sterling Correctional Facility; none occurred at Colorado State Penitentiary.

Defendants. In all, the Consolidated Action consists of allegations against 26 defendants, 20 of whom Plaintiff accuses of having directly or indirectly participated in his repeated sexual assault or molestation.

The Sterling Actions, which involve common questions of law or fact, common parties, and common claims, were consolidated by Court order on May 13, 2009, to avoid unnecessary costs and delays (the "Consolidation Order"). (Doc. # 94.) In the Consolidation Order, the Court instructed Plaintiff to "file one amended complaint that corrals all of his factual allegations against all of the appropriate defendants into a common, operative pleading." (*Id.* at 1). The Court further directed Plaintiff to comply with the Federal Rules of Civil Procedure, including Rule 8(a)(2). Additionally, the Court warned Plaintiff that "[g]roundless and vexatious litigation will justify an order enjoining a litigant from filing any claims without first seeking prior leave of court."[3] (*Id.* at 2.) The Court further warned Plaintiff that "failure to comply with this order and/or future unwarranted and vexatious litigious behavior may subject [Plaintiff] to sanctions, including dismissal of his cases and restrictive conditions on future filings." (*Id.*)

---

[3] Plaintiff's allegations against so many defendants undermine the veracity of Plaintiff's claims. Additionally, Plaintiff's pre-consolidation filing methods suggest a pattern of maliciousness. For example, several of the pre-consolidation Sterling Actions are unnecessarily cumulative and redundant. Two of the Defendants, Warden Kevin Milyard and Lieutenant Carpenter, have been named in more than one action. Several of the Sterling Actions allege conduct that occurred during time frames of other Sterling Actions. For example, Case Nos. 08-cv-01599 (filed on July 29, 2008), 08-cv-02536 (filed on November 21, 2008), and 09-cv-00667 (filed on March 25, 2009) all allege conduct that occurred between 2007 and the spring/summer of 2008. In one instance, Plaintiff filed two actions on the same day (Case Nos. 09-cv-00662 and 09-cv-00667, both filed on March 25, 2009). Another two actions were filed within three weeks of each other and alleged conduct during overlapping time periods (Case Nos. 09-cv-00754 and 09-cv-00961). Rather than minimize his filings from the outset, Plaintiff has unnecessarily multiplied the proceedings by papering the Court with cumulative and redundant filings and frivolous motions. These filing practices mirror Plaintiff's penchant for filing an excessive number of grievances in prison, at least a vast majority of which were deemed frivolous. (*See, e.g.*, Doc. # 113-2 at 5, 27, 35, and 36).

On June 15, 2009, pursuant to the Court's Consolidation Order, Plaintiff filed a Consolidated Amended Complaint against all Defendants. (Doc. # 113.) Despite the Court's prior direction to comply with Fed. R. Civ. P. 8(a)(2), Plaintiff's Consolidated Amended Complaint, which contains 10 claims, consists of no less than 81 pages, 5 of which are devoted to "Jurisdiction." It is apparent that Plaintiff simply compiled or collated the complaints from the underlying actions, without any meaningful editing or synthesis. Not only has Plaintiff burdened the Court with this unnecessarily voluminous pleading, but the Complaint itself consists of rambling, repetitive, disjointed, and often unintelligible allegations.

As previously noted, Plaintiff filed his Consolidated Amended Complaint (Doc. # 113) on June 15, 2009. On July 17, 2009, in lieu of an Answer, Defendants Belcher, Scott, Dodge, Soares Milyard, Hardy, Waide, Haney, Starner, Carpenter, Ummel, Logan, May, Negley, Edelen, Canfield, Gomez, Jenkins, and Manning filed a Motion to Dismiss ("First Motion to Dismiss"). (Doc. # 125.) On October 5, 2009, a separate Motion to Dismiss was filed by Defendants Fortunato, Dowis, Larson, Chapdelaine, and Harms ("Second Motion to Dismiss").[4] (Doc. # 145.) Defendants filed the Motions to Dismiss pursuant to 29 U.S.C. § 1915(e)(2) and Rules 8, 12(b)(1), 12(b)(6), and 41(b) of

---

[4] As previously noted, Defendants Leiba and Webster, who are no longer employed by the CDOC, have not filed a dispositive motion.

the Federal Rules of Civil Procedure.  On November 12, 2009, Plaintiff responded to the

Motions to Dismiss.  (Doc. #157).[5]  Defendants did not file Reply briefs.

## II.  STANDARDS OF REVIEW

Pursuant to Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief."  The Supreme Court

clarified this requirement in *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949, 178

L.Ed. 2d 868 (2009), which stated:

> [T]he pleading standard Rule 8 announces does not require detailed
> factual allegations, but it demands more than an unadorned, the-
> defendant-unlawfully-harmed-me accusation.  A pleading that offers labels
> and conclusions or a formulaic recitation of the elements of a cause of
> action will not do.  Nor does a complaint suffice if it tenders naked
> assertion[s] devoid of further factual enhancement.

(internal quotations and citations omitted).

A motion to dismiss based on immunity is treated as a motion to dismiss a

complaint for lack of jurisdiction over the subject matter pursuant to Fed. R. Civ. P.

12(b)(1).  *Meyers v. Colo. Dept. of Human Servs.*, 62 Fed. Appx. 831, 832 (10th Cir.

2003).  A Rule 12(b)(1) dismissal is not a judgment on the merits, but a determination

that the court lacks authority to adjudicate the matter.  *See Castaneda v. I.N.S.*, 23 F.3d

1576, 1580 (10th Cir. 1994).  The party asserting jurisdiction bears the burden of

---

[5]  Though Doc. #157 was docketed as a Response to the Second Motion to Dismiss, pursuant to a November 19, 2008 Minute Order (Doc. # 161), that Response will also be treated as a Response to the First Motion to Dismiss.  On December 14, 2009, Plaintiff filed a second Response to the Motions to Dismiss.  (Doc. # 164).  However, except for the Certificates of Service, Plaintiff's Response briefs are identical.  Accordingly, all references to Plaintiff's Response brief will be to Doc. # 157.

establishing the existence of subject matter jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The court's function is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court, however, need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). Further, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

Rule 41(b) provides that a defendant may move to dismiss the action or a claim against it when a plaintiff fails to prosecute his claim or fails to comply with a court order or with the Rules of Civil Procedure. Rule 41(b) has been interpreted as permitting courts to dismiss actions *sua sponte* when a litigant fails to follow "any order of the

court."[6]  *See Powell v. Rios*, 241 Fed. Appx. 500, 506 (10th Cir. 2007) (unpublished) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)).

Finally, pursuant to 28 U.S.C. § 1915(e)(2)(B), a court shall dismiss a case filed under the *in forma pauperis* statute if the court determines that the action (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.  The directive to dismiss a claim that is frivolous[7] or malicious[8] "is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under [Fed.R.Civ.P.] 11." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).  "Simply because one is indigent, there is no constitutional right to the expenditure of public funds and the valuable time of federal courts to prosecute an action which is totally without merit." *Collins v. Cundy*, 603 F.2d 825, 828 (10th Cir. 1979).  "A federal constitutional question must exist 'not in mere

---

[6] "Unless the dismissal order states otherwise, a dismissal under this subdivision (b) . . . operates as an adjudication on the merits."  Fed. R. Civ. P.  41(b).

[7] "[A] complaint . . . is frivolous where it lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The term "frivolous" refers to "the inarguable legal conclusion" and "the fanciful factual allegation."  *Id.*  "[A] finding of factual frivolousness is appropriate when the facts alleged arise to the level of irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them."  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

[8] "The term "malicious", as used in 28 U.S.C. § 1915(e)(2) means "irresponsible litigation" brought "for the purpose of harassing."  *Daves v. Scranton*, 66 F.R.D. 5 (E.D. Pa. 1975).  "A complaint plainly abusive of the judicial process is properly typed malicious" within the context of section 1915(e)(2)(B)(i).  *Crisafi v. Holland*, 655 F.2d 1305, 1309 (D.C. Cir. 1981); *see also Ballentine v. Crawford*, 563 F. Supp. 627, 628 (N.D. Ind. 1983).  "A complaint that merely repeats pending or previously litigated claims may be considered abusive[.]" 563 F. Supp. at 629.  A court may properly dismiss a suit as malicious where a plaintiff has already engaged in a multitude of identical or closely similar suits.  *Denton*, 504 U.S. at 29.

form, but in substance, and not in mere assertion, but in essence and effect.'" *Wells v. Ward*, 470 F.2d 1185, 1189 (10th Cir. 1972) (quoting *Cuyahoga River Power Co. v. N. Ohio Traction & Light Co.*, 252 U.S. 388, 397 (1920)).

Finally, the *in forma pauperis* statute accords judges "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327. Clearly baseless factual contentions "are claims describing fantastic or delusional scenarios." *Id.*; *see also Hall v. Bellman*, 935 F.2d 1106, 1109 (10th Cir. 1991). "[T]he authority to 'pierce the veil of the complaint's factual allegations' means that a court is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations." *Denton*, 504 U.S. at 32. Whether a complaint is frivolous or malicious within the meaning of section 1915 "is a decision entrusted to the discretion of the court entertaining the *in forma pauperis* petition." *Id.* at 33.

"Judges must balance their misgivings and skepticism about the usual § 1983 prisoner suit against the cold knowledge that in certain instances injustices to prisoners occur in jails and prisons, some of which violate constitutional mandates . . . [I]t is the responsibility of the courts to be sensitive to possible abuses in order to ensure that prisoner complaints, particularly *pro se* complaints, are not dismissed prematurely, however unlikely the set of facts postulated." *Taylor v. Gibson*, 529 F.2d 709, 713 (5th Cir. 1976). Indeed, this Court is wholly aware of, and sensitive to, the fact that

instances of sexual abuse of prisoners by prison officials occur throughout this country. However, the mere fact that these grave acts do occur does not mean that Plaintiff's complaint will be deemed meritorious without Plaintiff's meeting the above-described criteria for making allegations and ensuring that any documentary evidence attached to the Consolidated Amended Complaint ("Complaint") does not actually contradict or undermine the allegations contained in the pleadings.

### III. DISMISSAL FOR FAILURE TO COMPLETE SERVICE OF PROCESS

As previously noted, Defendants Marie Leiba and Brian Webster are no longer employed by the CDOC. Attempts at service have failed and neither Leiba nor Webster have appeared or been represented in this Consolidated Action. (*See* Doc. # 142, returned unexecuted Webster Summons; Doc. # 167, returned unexecuted Leiba Summons).

On May 28, 2010, Plaintiff filed a Request for Court Order/Minute Order for Defendants Webster & Leiba to Be Served (the "Request for Service"). (Doc. # 189.) As Plaintiff duly notes, he filed the Consolidated Amended Complaint in June 2009. Pursuant to Fed. R. Civ. P. 4(m), "If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." In the instant case, since at least as early as August 2009, Plaintiff has been aware that Defendants

Webster and Leiba no longer work at the CDOC. (*See* Doc. # 130). Further, Plaintiff

has been aware that attempts to serve Webster in September 2009 and to serve Leiba

in December 2009 failed. (*See* Doc. # 142, Webster "has left the State of Colorado and

his whereabouts are unknown"; *see also* Doc. # 167, stating that Leiba left the CDOC in

2008 and cannot be located.). At least five months have passed between the time that

attempts to serve Webster and Leiba failed and Plaintiff filed the instant Request for

Service. Plaintiff has not shown good cause for this delay.

Accordingly, Defendants Leiba and Webster are dismissed from this

Consolidated Action and Plaintiff's Request for Court Order/Minute Order for

Defendants Webster & Leiba to Be Served (Doc. #189) is DENIED. In light of this

dismissal, the Court will not discuss the merits of Plaintiff's claims against Defendants

Leiba and Webster other than to note that those claims are frivolous for reasons similar

to those set forth below.

## IV. ANALYSIS[9]

Plaintiff's Complaint contains eleven claims for relief. Plaintiff is proceeding

*pro se*; thus, the Court must liberally construe his pleadings. *Haines v. Kerner*, 404

U.S. 519, 520-21 (1972). However, the Court cannot act as an advocate for a *pro se*

litigant, who must comply with the fundamental requirements of the Federal Rules of

Civil Procedure. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Despite the

---

[9] Although the manner by which Plaintiff consolidated the Sterling Actions does not comport with the Consolidation Order or with the Federal Rules of Civil Procedure, the Court has undertaken a substantive analysis of Plaintiff's claims, as a result of the serious nature of Defendants' alleged conduct.

fact that Plaintiff's Complaint is not a model of clarity and his constitutional claims are

inextricably linked with one another, the Court has attempted to compile and organize

Plaintiff's various allegations according to each constitutional claim, namely the Eighth,

Fourth, Fourteenth, and First amendments of the United States Constitution.  In

summary, Plaintiff appears to allege that nearly every corrections official he has

encountered has directly or indirectly retaliated against him for his prolific grievance

filings by way of sexual assault or molestation, harassing cell searches, destruction of

legal documents, filing of false disciplinary reports, and deliberate and unwarranted

discipline for alleged prison rule infractions.

## A.   EIGHTH AMENDMENT – CRUEL AND UNUSUAL PUNISHMENT

Plaintiff has alleged the following in support of his contention that at least 20

Defendants[10] directly or indirectly subjected him to cruel and unusual punishment,

in retaliation or punishment for Plaintiff's filing of various grievances and lawsuits.  In

pertinent part, Plaintiff has alleged that Defendants sexually molested and assaulted

---

[10]  Based on the Court's review of Plaintiff's allegations, he appears to allege that the following Defendants have subjected him to cruel and unusual punishment: (1) Sgt. Belcher, (2) Sgt. Dodge, (3) Associate Warden Soares, (4) Warden Milyard, (5) Corrections Office Hardy, (6) Waide, (7) Corrections Officer Haney, (8) Corrections Officer Starner, (9) Lt. Carpenter, (10) Corrections Officer Ummel, (11) Captain Logan, (12) Manning, (13) Dowis, (14) Edelen, (15) Canfield, (16) Corrections Officer Gomez, (17) Corrections Officer Jenkins, (18) Fortunato, (19) Larson, and (20) Lt. Harms.  This list does not include Defendants Leiba and Webster, whom the Court has dismissed due to Plaintiff's failure to complete service of process on them.  Of the 20 listed Defendants, the following 7 Defendants appear to be implicated in the alleged Eighth Amendment violations by way of their alleged knowledge of the sexual abuse, their refusal to investigate the related grievances, or their orders to subordinates to intensify harassment or to engage in sexual abuse of Plaintiff: (1) Associate Warden Soares, (2) Warden Milyard, (3) Waide, (4) Captain Logan, (5) Manning, (6) Dowis, (7) Larson, and (8) Lt. Harms.

him, enabled the abuse, or otherwise mistreated or threatened him in the following

ways:

- In 2007, "[Defendant] Soares requested [Defendants] Scott, Belcher, and Dodge to harass Cooper for his grievance filings." (Doc. # 113-1 at 24.)[11]

- "[Defendants] Belcher, Scott and Dodge threatened [P]laintiff to either plead guilty to solicitation of staff or they would force him into population to be murdered by inmates seeking [P]laintiff for his testimony in a murder trial against Jessee McKim." (*Ia.*)

- During some unspecified time period, Defendant Milyard "ordered" Defendants Hardy and Haney to "harass [P]laintiff and to ramsack [sic] repeatedly [P]laintiffs [sic] possessions." "[ ] Hardy and Haney complied enthusiastically <u>beyond</u> this request" and "demand[ed] that [Plaintiff] engage in deviate anal, disgusting, and immoral sexual acts with Hardy" in Plaintiff's cell, while Haney functioned as a look-out and encouraged Hardy. "When [Plaintiff] would not fit . . . Hardy sprayed Cooper with mace/o.c. spray[.]" (*Ia.* at 26.)

- "As soon as [Defendant] Waide received [a grievance Plaintiff filed in connection with Hardy's alleged sexual assault], Waide and Milyard ordered Hardy and Haney to intensify the harassments and cell searches for all legal documents. Warden Kevin Milyard ordered Major Waide to place a disciplinary report on [P]laintiff for (fraud) over the contents of the grievance on Hardy . . . Milyard and Waide refused to have the molestation investigated . . . ." (*Ia.* at 27.)

- In June 2008, Lt. Scott, Sgt. Dodge, and Belcher approached Plaintiff in his cell, handcuffed him and placed him in a "choke hold," demanded that Plaintiff recant all his grievances and lawsuits, and proceeded to "sexually molest[ ]" Plaintiff. (*Ia.* at 25.)

- Defendants Negley, Milyard, and Logan failed to follow Sterling's procedures for conducting post-assault medical examinations and related psychological evaluations after Defendant Leiba allegedly slammed Plaintiff's food port door on his arm and thereby caused

---

[11] Page numbers refer to the CM/ECF docketing system's numbering and not to the documents' original page numbers.

injury to it.  (*Ia.* at 29).  "Defendant Logan knowingly allowed Defendant Leiba to harass[,] threaten" Plaintiff.  (*Ia.* at 28.)

- In September 2008, Defendants Edelen, Canfield, Gomez, and Jenkins entered Plaintiff's cell and "deviately [sic] orally sexually molested plaintiffs [sic] gentallia [sic].  Defendants Gomez and Jenkins then held [P]laintiff as Canfield & Edelen rectally molested plaintiffs' [sic] gentalia [sic]."  (*Ia.* at 30.)  "[Defendant] Manning refused to process the grievance," "refused to turn the information over to investigators[,] and began threatening [P]laintiff to remain quiet."  (*Ia.*)

- Also in September 2008, Plaintiff was "sexually molested by [Defendants] Doctor Fortunato and physicians assistant Webster" who "took turns orally molesting plaintiffs [sic] gentalia and drooled fluids into plaintiffs [sic] pants."  (*Ia.* at 33.)  Plaintiff alleges that Defendants Fortunato and Webster "advise[d] [P]laintiff that Larimer county prosecutors, Roy, Bishop, and Doak requested Warden Milyard to have [D]efendants Fortunato and Webster abuse [P]laintiff."[12]  (*Ia.*)  Plaintiff also alleges that Defendants Fortunato and Webster denied him interferon for treatment of his Hepatitis C, in an act of retaliation due to Plaintiff's having reported the alleged molestation.[13]  (*Ia.*)  Plaintiff further contends that "Case manager Snyder walked up and saw Defendants Webster and Fortunato orally molesting [P]laintiffs [sic] gentalia."  (*Ia.* at 35.)

- In February 2009, Defendants Starner, Carpenter, and Ummel entered Plaintiff's cell and "rectally molested plaintiffs [sic] gentalia [sic]," which caused Plaintiff to become "so disgusted" that he "regurgateded [sic] on [Defendant] Carpenters [sic] boots."  As these three Defendants left Plaintiff's cell, Defendant Ummel "slamed [sic] plaintiffs [sic] door on his arm causeing [sic] injury."  (*Ia.* at 32.)

- Defendant Dowis refused to process molestation-related grievances and threatened denial of interferon treatment if Plaintiff continued filing grievances.  (*Ia.* at 34.)

---

[12]  Plaintiff also alleges that "Alternate defense council Lindy Frolich and council Keith Coleman also requested plaintiffs [sic] abuse."  (*Id.* at 34.)  However, they are not parties to this action.

[13]  At the same time, Plaintiff confusingly states that he "does not herein sue for refusal of interferon".  (*Id.*)

- Defendant Larson "on numerous occasions confessed to [P]laintiff she knew in advance of his [sexual] abuse coming by Webster and Fortunato." (*Id.*)

- Defendant Harms "deliberately found Plaintiff guilty" of a rule violation and "confessed he also knew the Larimer prosecutors requested Defendant Milyard had [D]efendants Webster and Fortunato abuse [P]laintiff." (*Id.* at 35.)

1. <u>Substantive Analysis of Plaintiff's Eighth Amendment Claim – Sexual Abuse and Molestation</u>[14]

The Eighth Amendment, which protects prisoners from cruel and unusual punishment, protects inmates from sexual abuse by correctional personnel. *See Meyer v. Nava*, 518 F. Supp. 2d 1279, 1286 (D. Kan. 2007); *see also Smith v. Cochran*, 216 F. Supp. 2d 1286, 1292 (N.D. Okla. 2001), *aff'd*, 339 F.3d 1205 (10th Cir. 2001) ("Although the Eighth Amendment's prohibition against cruel and unusual punishment unnecessarily excludes from constitutional regulation *de minimus* uses of force, when an inmate establishes that the alleged sexual abuse was egregious and pervasive, a claim under the Eighth Amendment can be made.") (Internal citation omitted.)

_____

[14] In a myriad of instances, Plaintiff refers to Defendants' acts as "oral molestation" or "rectal molestation" of his genitals when describing alleged acts of rape involving <u>his</u> genitals. Even if such alleged conduct amounts to molestation, rather than sexual assault/rape, Plaintiff's claim also fails to the extent it is premised on the inappropriate touching of his genitals. Allegations of suggestive touching, alone, are insufficient to give rise to a constitutional violation. *See, e.g., Joseph v. U.S. Fed. Bureau of Prisons*, No. 00-1208, 2000 WL 1532783, at *1-*2 (10th Cir. Oct. 16, 2000) (unpublished) (finding that a defendant's alleged suggestive touching and exposure of her breasts to the plaintiff were not sufficiently serious to invoke the Eighth Amendment, despite the plaintiff's allegations of emotional distress); *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (also finding no actionable Eighth Amendment claim arising from an allegedly suggestive statement and inappropriate touching, including the touching of the plaintiff's genitals); *Escobar v. Reid*, 668 F. Supp. 2d 1260, 1295-96 (D. Colo. 2009) (adopting recommended dismissal of the plaintiff's Eighth Amendment claim arising from a defendant's alleged groping of the plaintiff's buttocks and fondling of the plaintiff's genitals); *Williams v. Anderson*, No. 03-3254, 2004 WL 2282927 (D. Kan. Sept. 7, 2004) (unpublished) (finding that degrading remarks, grabbing of the plaintiff's buttocks, and indecent exposure did not give rise to an actionable Eighth Amendment claim).

An actionable claim for an Eighth Amendment violation exists where (1) the alleged infliction is "objectively, sufficiently serious" and (2) the state official had a "sufficiently culpable state of mind." *Meyer v. Nava*, 518 F. Supp. 2d at 1286 (D. Kan. 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *Joseph v. U.S. Fed. Bureau of Prisons*, No. 00-1208, 2000 WL 1532783, at *2 (10th Cir. Oct. 16, 2000) (unpublished). "The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency . . . [h]owever, that is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. Instead, the alleged conduct must be of a sort repugnant to the conscience of mankind." *Williams v. Anderson*, No. 03-3254, 2004 WL 2282927, at *2 (D. Kan. Sept. 7, 2004) (unpublished) (internal quotations and citations omitted). A prisoner's right to bodily integrity and to be free from attack by prison guards is a clearly established constitutional right. *See Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993).

With respect to the second element, the subjective component, Plaintiff's allegations must render plausible that prison officials acted "maliciously and sadistically for the very purpose of causing harm." *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1290 (10th Cir. 1999) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). "Courts have repeatedly recognized that because no legitimate law enforcement or penalogical purpose can be inferred by the sexual abuse by a prison official, the sufficiently culpable state of mind is present[.]" *Id.*

In the instant case, as set forth above, Plaintiff has alleged that 13 Defendants, namely Sgt. Belcher, Lt. Scott, Sgt. Dodge, Corrections Officer Hardy, Corrections Officer Haney, Corrections Officer Starner, Lt. Carpenter, Corrections Officer Ummel, Edelen, Canfield, Corrections Officer Gomez, Corrections Officer Jenkins, and Fortunato, either sexually assaulted him or aided and abetted the sexual assault.[15] As set forth above, these allegations give rise to an Eighth Amendment claim because they are violations of Plaintiff's right to be secure in his bodily integrity.

However, Plaintiff's veracity and credibility is undercut by the fact that Plaintiff has filed at least 18 lawsuits in the District of Colorado, 17 of which include or included

---

[15] Plaintiff also appears to implicate Defendants Warden Milyard, Associate Warden Soares, and Lloyd Waide in the sexual assault as a result of their supervisory authority or because Milyard and Waide allegedly "ordered" the rape to occur and Soares allegedly "requested" Plaintiff's harassment. (*See* Doc. # 113-1 at 24, 26, 27, 33). The allegations against Defendants Soares, Captain Logan, Charlene Larson, and Lt. Harms also appear to stem, in part, from Soares' "deliberate indifference" and "inappropriate supervision," Logan's knowledge of the "harassment," and Lt. Harms' and Larson's knowledge of the sexual assaults. (*Id.* at 18, 28, 34, and 35.)

To the extent that any of these allegations against Defendants stem strictly from their supervisory authority, the Court notes that "government officials are not vicariously liable for the misconduct of their subordinates." *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006); *see also Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."). "Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights. . .the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights." *Serna*, 455 F.3d at 1151. "[M]ere negligence is insufficient to establish supervisory liability." *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992). In the instant case, Plaintiff seems to allege that Defendants Milyard, Soares, Waide, Logan, Larson, and Harms are vicariously liable for the conduct of other Defendants. Accordingly, Plaintiff has failed to state a claim against them. Further, to the extent that Plaintiff's allegations against Defendants Milyard and Waide stem from their supposed involvement in ordering the rape, such allegations are entirely speculative, conclusory, and unsupported. Plaintiff's allegations concerning Defendants Logan's, Harms', and Larson's knowledge of the events is also entirely unsupported. To the extent that Plaintiff has attached a letter he sent to Defendant Logan concerning harassment by Sgt. Marie Leiba, that letter does not concern any of the alleged egregious conduct, but concerns Leiba's supposed refusal to let Plaintiff take a shower. (Doc. # 113-2 at 20.) These allegations do not meet *Twombly*'s heightened pleading standard and, therefore, are stricken, and Plaintiff's Eighth Amendment claim is dismissed against Defendants Milyard, Soares, Waide, Logan, Larson, and Harms.

graphic allegations of sexual assault, molestation, and retaliation by virtually any person with whom Plaintiff has come into contact, including an assistant district attorney.[16] As explained below, the frequency with which Plaintiff has asserted sex abuse claims against a widening base of defendants suggests a frivolity and maliciousness to the pleadings. Although the Court would generally be extremely concerned by allegations of sexual assault against a prisoner, Plaintiff's pleading practices strongly suggest a fanciful or delusional aspect to his allegations and an abusive use of the judicial process.[17] Further, the lack of any allegations concerning physical, emotional, or

---

[16] Pursuant to Fed. R. Evid. 201, a court may exercise its discretion to take judicial notice of any facts generally known within the trial court's jurisdiction or which can be readily determined through accurate sources. The following is a list of the 18 lawsuits Plaintiff has filed: 08-cv-00530 (case dismissed due to Plaintiff's failure to cure deficiency); 08-cv-01599 (instant Consolidated Action); 08-cv-02536 (part of instant Consolidated Action); 09-cv-00662 (part of instant Consolidated Action); 09-cv-00667 (part of instant Consolidated Action); 09-cv-00754 (part of instant Consolidated Action); 09-cv-00961 (part of instant Consolidated Action); 09-cv-00995 (voluntarily dismissed); 09-cv-01871 (case dismissed due to Plaintiff's failure to cure deficiencies; Plaintiff never filed other complaint, basis for lawsuit is unknown); 09-cv-02218 (voluntarily dismissed); 09-cv-02219 (voluntarily dismissed); 09-cv-02965 (still pending); 10-cv-00025 (still pending); 10-cv-00361 (case dismissed due to Plaintiff's failure to cure deficiencies); 10-cv-00522 (case dismissed due to Plaintiff's failure to cure deficiencies); 10-cv-00560 (still pending); 10-cv-00716 (still pending); and 10-cv-00978 (case dismissed because it is repetitive of claims in other filed actions). Charts setting forth the asserted claims and defendants in a majority of these cases are at Appendices B and C.

[17] For the reasons discussed in this Order, this Court greatly questions the veracity of these claims. Notably, in only one instance does Plaintiff appear to have alleged that he was "shocked and frightened" by any of Defendant's conduct. (*See* Doc. # 113-2 at 16). To the extent that Plaintiff's allegations are false, such false allegations are as deplorable as the alleged conduct.

Further, Plaintiff has engaged in abusive litigation tactics, which is evidenced by his history of filing numerous frivolous motions in this case. Over the course of ten months, from November 14, 2008, through September 10, 2009, Plaintiff filed no less than six motions for injunctive relief. Two of these emergency motions were filed within two days of each other and both alleged conduct during similar time periods (Doc. ## 35 and 37, filed on December 17 and 19, 2008.) The Court denied each of these motions due to an utter lack of merit. Moreover, the Court repeatedly warned Plaintiff of the consequences of filing frivolous motions or pleadings and issued its "final warning" that Plaintiff's filing of additional frivolous motions or pleadings would result in restrictions on his ability to file future lawsuits or motions. (*See* Doc. # 143 at 4; *see also* Doc. # 94 at 2.) A summary of Plaintiff's motions is available at Appendix A.

psychological injuries resulting from the alleged sexual abuse renders Plaintiff's claims suspect. Because this is an action filed under the *in forma pauperis* statute, the Court will exercise its "unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless," as set forth below. *Neitzke*, 490 U.S. at 327.

      2.    <u>Piercing the Veil of Plaintiff's Sexual Abuse Claims Due to Apparent Frivolousness or Maliciousness</u>

"The right of access to the courts is neither absolute nor unconditional, and there is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious." *Schlicher v. Thomas*, 111 F.3d 777, 781 (10th Cir. 1997) (internal quotations omitted). Although an inmate's right of access to the courts involves his or her right to present legitimate grievances to the courts, it does not include a right to threaten suit in order to intimidate and denigrate prison officials. *Smith v. Halford*, 570 F. Supp. 1187, 1195 (D. Kan. 1983).

Each of the Sterling Actions follows an identical factual pattern, and is a repeated attempt to bring the same claims before the Court.[18]

According to the facts alleged by Plaintiff, Defendants allegedly carried out every instance of sexual assault: (1) in retaliation against Plaintiff for filing lawsuits and administrative grievances; and (2) on orders of various persons of higher authority. The Court is well aware that sexual assaults do occur in prison and that sometimes such

---

[18] Plaintiff's penchant for bringing the same claims before ths Court is evidenced by the 12 other actions he has filed in this District. *See supra*, n.15; Appendices B and C.

acts are perpetrated by corrections employees. Such conduct is not to be tolerated. However, while each underlying action taken separately is not necessarily frivolous, a different picture emerges when all the filed actions are viewed together. *Denton v. Hernandez*, 504 U.S. 25, 29 (1992). That so many persons in various locations, whether presently or previously implicated, including attorneys at the Larimer County District Attorney's office, would engage in direct or indirect acts of retaliatory sexual molestation or assault of Plaintiff is irrational and wholly incredible. Plaintiff's allegations strongly suggest a malicious purpose behind Plaintiff's filings and the fantastic and delusional nature of his claims. Thus, the Court finds that Plaintiff's allegations of sexual abuse by Defendants are frivolous within the meaning of 28 U.S.C. § 1915(e)(2)(B)(i), and subject to dismissal. *See id.* at 33-34 (holding that district court's dismissal on frivolous grounds of five complaints alleging identical acts of sexual assault by different defendants was within the court's discretion under the *in forma pauperis* statute).

As noted above, in 18 separate lawsuits, Plaintiff has accused law enforcement authorities and corrections officials of sexual abuse, some of whom are accused in more than one action. The Court finds that the frivolous nature of Plaintiff's allegations cannot be cured by giving Plaintiff an opportunity to file an amended pleading. *See id.* at 34 ("[I]f it appears that frivolous factual allegations could be remedied through more specific pleading, a court of appeals reviewing a § 1915(e) disposition should consider whether the district court abused its discretion by dismissing the complaint with

prejudice or without leave to amend."); *see also Suarez v. Utah Bd. of Pardons & Parole*, 76 Fed. Appx. 230, 233 (10th Cir. 2003) (unpublished) (affirming dismissal with prejudice of due process claim where an inconceivable allegation that the governor conspired with the legislator to deprive the plaintiff of his due process rights could not be cured in an amended pleading); *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003) (affirming dismissal with prejudice of civil rights claims where the plaintiff failed to demonstrate the defendants' direct personal participation in alleged constitutional violations) *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007); *Valcik v. Shakes*, No. 08-cv-02545, 2009 WL 111575, at *2 (D. Colo. Jan. 14, 2009) (unpublished) (dismissing frivolous claim with prejudice); *but see Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990) (holding that a *pro se* prisoner's complaint should not be dismissed without leave to amend a potentially curable defect in standing).

Accordingly, for the foregoing reasons, Plaintiff's Eighth Amendment claim fails to the extent it arises from Defendants' alleged acts of sexual assault.

3. <u>Other Alleged Acts of Cruel and Unusual Punishment</u>

As noted above, Plaintiff also appears to base his Eighth Amendment claim on (a) Defendants Belcher, Scott, and Dodges' alleged threat that they would force him into general population to be murdered by another inmate and (b) an alleged injury Plaintiff suffered to his arm when Defendant Ummel slammed Plaintiff's cell door. (Doc. # 113-1

at 24, 32.)  However, both of these allegations fail to amount to an actionable Eighth Amendment claim.

First, "acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment."  *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) (citing *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) ("Verbal harassment or abuse of the sort alleged in this case [*i.e.*, sheriff threatened to hang prisoner following prisoner's request to mail some legal correspondence] is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.")).

Second, with respect to Plaintiff's alleged arm injury, Plaintiff has failed to satisfy either prong of an Eighth Amendment claim.  Plaintiff has neither alleged that the injury was sufficiently serious nor alleged that Defendant Ummel acted with a culpable state of mind.

**B.	FOURTH AMENDMENT – SEARCH AND SEIZURE AND RIGHT OF PRIVACY**

Plaintiff contends that, in retaliation or punishment for his filing of various grievances and lawsuits, Defendants subjected him to unreasonable searches and seizures in violation of the Fourth Amendment.  Plaintiff alleges that Defendants unreasonably searched his cell and seized his property in the following ways:

- At some unspecified time, Defendant Warden Milyard "ordered" Defendants Hardy and Haney to "ramsack [sic] repeatedly [P]laintiffs [sic] possessions in search of all legal documents. [And] Hardy and Haney complied enthusiastically beyond this request."  (Doc. # 113-1 at 26.)

- Also at an unspecified time, Defendants "Waide and Milyard "ordered" Hardy and Haney to intensify the harassments & cell searches for all legal documents" and permanently confiscated certain canteen items, namely "2 Ruffles potato [sic] chips, 2 chocolate granola bars, 4 instant tea packs, 2 Nutty bar [sic] boxes."  (*Id.* at 27.)

- In February 2009, Defendants Starner, Carpenter, and Ummel "came to [P]laintiffs [sic] cell, handcuffed [P]laintiff [sic] located civil documents, grievances, etc; tore them up and flushed them down the toilet."  (*Id.* at 31.)

1. Search of Cell

As clearly stated by the Tenth Circuit, "prisoners are not protected under the Fourth Amendment from unreasonable searches of their prison cells or from the wrongful seizure of property contained in their cells because 'the Fourth Amendment does not establish a right to privacy in prisoners' cells.'" *Rodriguez-Rodriguez v. United States*, 4 Fed. Appx. 637, 639 (10th Cir. 2001) (unpublished) (quoting *Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir. 1995)) (finding that the prisoner plaintiff's Fourth Amendment claim arising from prison officials' search and seizure in his prison cell fails).

Given that periodic cell searches are an integral part of prison life, prisoners have no right to privacy with respect to cell searches.  *Hudson v. Palmer*, 468 U.S. 517, 526, 529-30 (1984) ("prisoners have no legitimate expectation of privacy and [ ] Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells"); *see also Garcia v. Lawrence*, 118 Fed. Appx. 436, 438 (10th Cir. 2004) (unpublished). "That prison officials may inspect or examine the effects and communications of prison inmates without depriving the inmates of their constitutional rights is well established."

*Denson v. United States*, 424 F.2d 329, 331 (10th Cir. 1970) (citing *Cox v. Crouse*, 376 F.2d 824 (10th Cir. 1967)).  Accordingly, Plaintiff's Fourth Amendment claim arising from Defendants' mere act of conducting cell searches fails.

However, prisoners are not without constitutional protections against searches conducted for purposes of harassment, which Plaintiff contends is the motivation behind the cell searches in the instant case.  *See Hudson*, 468 U.S. at 530 (discussing possible Eighth Amendment protections against harassment-driven searches).  As noted by the Tenth Circuit in its review of Eighth Amendment claims arising from cell searches, "courts have determined that frequent and retaliatory cell searches which result in the violent dishevelment of [the prisoner's] cell and cause the prisoner to suffer 'fear, mental anguish, and misery' constitute an Eighth Amendment violation."  *Chevere v. Johnson*, No. 93-6281, 1994 WL 577554, at *2 (10th Cir. Oct. 17, 1994) (unpublished) (finding no Eighth Amendment violation where, during a cell search, officers allegedly stepped on a Puerto Rican flag and allowed a crucifix to fall to the floor).

In the instant case, Plaintiff has alleged that some Defendants searched his cell on at least three occasions in retaliation for Plaintiff's grievance filings.  However, Plaintiff has not alleged that he suffered in any way from the cell searches at issue, and these allegations are insufficient to demonstrate the severe harassment necessary to give rise to an Eighth Amendment claim.  Accordingly, Plaintiff fails to state a violation of either his Fourth or Eighth Amendment rights as a result of the cell searches conducted by Defendants.

With respect to the seizure of Plaintiff's legal materials, Plaintiff has alleged neither a complete denial of access to legal resources nor that he has been prejudiced by the defendant's actions. Plaintiff has not alleged that the confiscation and destruction of legal materials hindered him in some significant way. *See Clemmons v. Davies*, No. 94-3268, 1996 WL 282283, at *4 (10th Cir. May 29, 1996) (unpublished) (citing *Green v. Johnson*, 977 F.2d 1383, 1390 (10th Cir. 1992)). To establish prejudice, a prisoner must show that his prosecution of "the underlying action must be affirmatively hindered in some significant way; there must be 'actual substantial prejudice to specific litigation.'" *Id.*; *see also Vigliotto v. Terry*, 873 F.2d 1201, 1202 (9th Cir. 1989) (finding no Eighth Amendment violation despite the alleged confiscation – two weeks before *pro se* Plaintiff's appellate brief deadline – of state trial records, photocopies of approximately 2,000 cases and law review articles, and numerous trial-related newspaper clippings during a single search). In fact, Plaintiff's litigiousness in this Court belies Plaintiff's allegations that he was significantly hindered in accessing the court. Therefore, the Court finds that, even if true, Plaintiff's allegations fail to show that the searches for, and seizure of, legal papers amounted to cruel and unusual punishment. Accordingly, Plaintiff's Fourth and Eighth amendment constitutional claims arising from the alleged seizure and destruction of legal materials also fails.

Finally, Plaintiff alleges that, in one instance, canteen items (potato chips, granola and nutty bars, and instant tea) were permanently confiscated. These allegations, however, do not rise to the level proscribed by the Eighth Amendment.

Not all deprivations of personal items amount to a constitutional violation. "[O]nly deprivations of 'essential human needs' trigger the Eighth Amendment proscription against cruel and unusual punishment." *Gillihan v. Shillinger*, 872 F.2d 935, 941 (10th Cir. 1989) (discussing *Inmates of Occoquan v. Barry*, 844 F.2d 828, 836 (D.C. Cir. 1988)). Notably, in *Gillihan*, the Tenth Circuit affirmed the lower court's finding that the prisoner plaintiff's inability to purchase cigarettes, coffee, and personal and hygiene items, which deprived plaintiff of "what little luxury" he had, did not amount to cruel and unusual punishment under the Eighth Amendment, although it may have been "restrictive and even harsh." *Id*; *see also Thomas v. N.M. Corr. Dept.*, 272 Fed. Appx. 727, 730 (10th Cir. 2008) (unpublished) (finding that prisoner plaintiff's deprivation of personal property did not amount to cruel and unusual punishment).

Accordingly, Plaintiff's Fourth and Eighth amendment claims arising from the searches of his cell, confiscation of canteen items, and seizure and destruction of legal documents fail and are dismissed with prejudice.

2.    Search of Person

Plaintiff also alleges that Defendants violated his Fourth Amendment "privacy rights by extorting [sic] harassing and sexually molesting Plaintiff against his will." (Doc. # 113-1 at 18, 19, 21, 22.) In particular, Plaintiff alleges specific instances during which he was "sexually molested" or "orally molest[ed]". (*See* Doc. # 113-1 at 25, 30, and 35.)

As previously noted, prison inmates retain a Fourth Amendment privacy interest in the integrity of their own persons, which privacy interest extends to personal body

searches of inmates. *See Bell v. Wolfish*, 441 U.S. 520, 558 (1979). "The State's need for a particular search must be weighed against the invasion of a detainee's personal rights of privacy and dignity." *Clark v. Tinnin*, 731 F. Supp. 998, 1006 (D. Colo. 1990). A determination of a search's reasonableness requires an analysis of four factors: (1) the scope of the particular intrusion; (2) the manner in which it is conducted; (3) the justification for initiating it; and (4) the place where it is conducted. *Bell*, 441 U.S. at 559. The greater the intrusion on the right of privacy, the greater the justification that is needed. *Levoy v. Mills*, 788 F.2d 1437, 1439 (10th Cir. 1986).

If Plaintiff's molestation allegations are true, there is no legitimate penological justification for such molestation. *See*, *e.g.*, *Shroff v. Spellman*, 599 F.3d 1119, 1130 (10th Cir. 2010) (finding requirement that inmate plaintiff expose her breasts lacked any justification and constituted a Fourth Amendment violation); *see also Leroy*, 788 F.2d at 1439 (finding error in district court's dismissal of Fourth Amendment claim stemming from allegations of an unjustified body cavity search). However, the Court exercises its authority to pierce the veil of the Consolidated Amended Complaint, as it is allowed to do with complaints filed under the *in forma pauperis* statute. *See Neitzke*, 490 U.S. at 327. The veracity of Plaintiff's sexual molestation claims is questionable for the same reasons that Plaintiff's Eighth Amendment sexual assault claims are suspect, namely the number of defendants implicated in such conduct and the various locations in which such conduct occurred. Moreover, in one of the exhibits attached to the Consolidated Amended Complaint, it is noted that Plaintiff "has made a habit of filing fraudulent

grievances alleging sexual molestation every time he is [p]at [s]earched by staff."

(Doc. # 113-2 at 9.) In other words, Plaintiff appears to misrepresent "frisking" for

molestation. Accordingly, as with Plaintiff's Eighth Amendment sexual assault/rape

claims, Plaintiff's Fourth Amendment sexual molestation claims are dismissed with

prejudice.

## C.    FOURTEENTH AMENDMENT – DUE PROCESS VIOLATIONS

Plaintiff appears to contend that Defendants violated his Fourteenth Amendment

rights when they terminated him from his prison job, failed to investigate and/or respond

to his grievances, "deliberately" found him guilty of a rule violation, and revoked certain

privileges without due process. In particular, Plaintiff's Fourteenth Amendment claims

arise from the following alleged conduct:

- On or around February 28, 2008, Defendant Logan (along with Defendant Leiba, who has been dismissed from this action for lack of service) terminated Plaintiff from his job as a segregation custodial worker. (Doc. # 113-1 at 28.)

- Plaintiff was denied a thorough investigation of his termination-related grievance, when Investigator Graham stopped the investigation and relied on untrue statements made by Defendants Logan, Leiba, Negley, and Milyard. (*Id.*)

- On March 24, 2008, Defendant May "deliberately" found Plaintiff guilty of disobeying a lawful order to lockdown, despite the fact that "the preponderance of the evidence was overwhelmingly in Plaintiffs [sic] favor." (*Id.* at 28.)

- In April 2008, at Defendant Soares' request that Plaintiff be disciplined for his filing of grievances, Plaintiff's "T.V. privileges was [sic] taken, all legal papers confiscated and [sic] canteen and his ad-seg level set back with no write-up of any kind." (*Id.* at 24.)

• In or around September 2008, Defendants Carpenter and Manning violated Sterling's procedures concerning "professional standards investigation[s]" and emergency grievances when they failed to submit to investigators certain "evidence" (*i.e.*, Plaintiff's boxer shorts) of alleged sex acts or process a grievance Plaintiff allegedly filed concerning the matter. (*Id.* at 30.)

• At a November 17, 2008 disciplinary hearing, Plaintiff was "deliberately" found guilty of a violation stemming from the taking of his medicine. (*Id.* at 35.)

• Defendants failed to respond to a grievance Plaintiff filed in February 2009 concerning Defendant Starner, Carpenter, and Ummel's alleged destruction of certain of Plaintiff's legal papers[19] and alleged molestation and sexual assault of Plaintiff. (*Id.* at 32.) Plaintiff also alleges that Defendants ignored several grievances Plaintiff filed between September and November 2008. (*Id.* at 34.)

The Court will first address Plaintiff's purported rights and liberty interests in prison employment and certain prison privileges. As a general principle, "[s]tates may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these [liberty] interests will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). State action taken for a punitive reason does not necessarily encroach upon a liberty interest under the Due Process Clause. *Id.* at 484. Rather, "[i]t effectuates prison

---

[19] Whether the destruction of certain legal papers is the basis, in part, for Plaintiff's due process claim is unclear from the face of the Consolidated Amended Complaint. Nonetheless, the Court finds that such destruction does not amount to a due process violation where, as here, Plaintiff has clearly been able to file numerous complaints with this Court. "At worst, [D]efendants' misconduct temporarily, but not fatally, delayed, and did not unreasonably hinder, the filing of [ ] claims." *Purkey v. Green*, 28 Fed. Appx. 736, 742 (10th Cir. 2001) (unpublished).

management and prisoner rehabilitative goals." *Id.* at 485. "[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* (internal citations and quotations omitted).

1.    Property or Liberty Interest in Prison Employment

Plaintiff's Fourteenth Amendment claim fails to the extent it is premised on his termination from prison employment. Precedent clearly states that "[t]he Constitution does not create a property or liberty interest in prison employment." *Ingram v. Papalia*, 804 F.2d 595, 596-97 (10th Cir. 1986) (citing several cases for this principle) (quoted in *Smith v. Ortiz*, No. 05-1211, 2006 WL 620871, at *2 (10th Cir. Mar. 14, 2006) (unpublished)). Similarly, with respect to prison inmates, "Colorado law does not create a protected property or liberty interest to either employment in any particular job or continued employment in any particular job." *Ingram*, 804 F.2d at 596; *see also* COLO. REV. STAT. § 17-24-102.

2.    Revocation of Certain Privileges and Change in Administrative Segregation Classification

Plaintiff's Fourteenth Amendment claim also fails to the extent it is premised on the revocation of certain privileges and the "set back" of his administrative segregation classification.[20]

---

[20] Although not entirely clear from the Complaint, Plaintiff also appears to complain about the loss of good time credits. Even if Plaintiff lost good time credits, his Fourteenth Amendment claim still fails for the reasons discussed below.

As previously noted, incarceration entails a loss of certain privileges and rights. *Sandin*, 515 U.S. at 485. "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." *Id.* Additionally, "[c]hanging an inmate's classification ordinarily does not deprive him of liberty because he is not entitled to a particular degree of liberty in prison." *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (finding no liberty interest in being free from administrative segregation classification).

However, "an inmate's liberty interest in his earned good time credits cannot be denied 'without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment.'" *Mitchell v. Maynard*, 80 F.3d 1433, 1444-45 (10th Cir. 1996) (upholding revocation of good time) (quoting *Ponte v. Real*, 471 U.S. 491, 495 (1985)). Nevertheless, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due to a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). A disciplinary proceeding meets the standards of due process when an inmate receives (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Smith v. Maschner*, 899 F.2d 940, 946 (10th Cir. 1990).

In the instant case, without much context, Plaintiff alleges that in April 2008, "his T.V. privileges was [sic] taken, all legal papers confiscated and canteen [sic] and his ad-seg level set back with no write-up of any kind . . . ." (Doc. # 113-1 at 24.) However, the exhibits attached to the Complaint highlight the falsity of Plaintiff's allegation that Defendants baselessly revoked the aforementioned privileges and "set back" his administrative segregation classification without notice and a hearing. The documents suggest that Plaintiff lost these privileges as a course of discipline and after notice and disciplinary proceedings. *See* Doc. # 113-2 at 21 (Disposition of Charges in connection with March 24, 2008 hearing in which Plaintiff was found in violation of a lawful order to "lock down" and subjected to a 40-day loss of various privileges, including canteen privileges).

Although his allegations are not entirely clear, Plaintiff also appears to complain about the loss of certain privileges and good time credits after Defendant May "deliberately" found Plaintiff guilty of violating Defendant Leiba's lawful order to "lock down" on February 28, 2008 (the "February 28 Incident"), upon the conclusion of a March 24, 2008 disciplinary hearing. (*See* Doc. # 113-2 at 21.) However, contrary to Plaintiff's contention, he did receive a write-up of the February 28 Incident on March 14, 2008, and notice of a future-scheduled hearing. (*Id.* at 17.) At the hearing, his request to present witnesses was denied because those witnesses had not seen the incident and their testimony would have been irrelevant. (*Id.* at 21.) The Disposition of Charges consisted of a written statement by Defendant May, the fact finder, of the evidence

relied on and the reasons for the disciplinary action.  (*Id.*)  The Court finds that the

evidence relied on supports Defendant May's decision and, contrary to Plaintiff's

contention, does not suggest that Defendant May's decision had an improper motive.[21]

### 3.  Confiscation of Canteen Items

With respect to Plaintiff's Fourteenth Amendment claim based on confiscation of

canteen items, prison officials "must hold a hearing before taking a plaintiff's property

unless a predeprivation hearing is not feasible, a predeprivation hearing is unduly

burdensome in proportion to the interest at stake, or the prison is unable to anticipate

the deprivation."  *Ware v. Nelson*, No. 95-3470, 1998 WL 154585, at *3 (D. Kan. Mar.

20, 1998) (unpublished) (citing *Zinerman v. Burch*, 494 U.S. 113, 132 (1990)).

---

[21]  Plaintiff's claim that he was "deliberately" found guilty of a rule violation at a November 17, 2008 disciplinary hearing also fails.  As with the March 24 Hearing, the November 17, 2008 Hearing appears to have met the standards of due process.  Plaintiff received advance written notice of the charges and the future-scheduled hearing, had an opportunity to present witnesses (which he waived), and received a written report of the findings and conclusions of the factfinder, Defendant Harms.  (*See* Doc. # 113-2 at 38 and 39.)  Plaintiff's allegations that he was "deliberately" found guilty are wholly speculative and cannot survive the standards under Fed. R. Civ. P. 12(b)(6) and *Twombly*.  Further, in connection with the November 17 Hearing, Plaintiff contends, "After the hearing, [Defendant] Harms confessed he also knew the Larimer prosecutors requested Defendant Milyard had Defendants Webster and Fortunato abuse [P]laintiff.  Harms confessed he knew [P]laintiff was shown reprisal but that Plaintiff must stop all grievances and lawsuits."  (Doc. # 113-1 at 35.)  Having pierced the veil of Plaintiff's Complaint, the Court finds the foregoing alleged statements are malicious and frivolous.  Plaintiff's proffer of these statements merely serves to further undermine the veracity of his claims in this action, as well as in the many other actions filed in this District.

Further, to the extent Plaintiff challenges the sufficiency of evidence presented at any of the hearings or the motivation behind the outcome, such claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and *Edwards v. Balisok*, 520 U.S. 641 (1997), which require Plaintiff to first exhaust state remedies before seeking damages under § 1983.  *Nutter v. Ward*, 173 Fed. Appx. 698, 702-03 (10th Cir. 2006) (unpublished); *Griffin v. Samu*, 65 Fed. Appx. 659, 660 (10th Cir. 2003) (unpublished).  To the extent that Plaintiff challenges the revocation of any good time credits, he cannot bring a § 1983 action until he has exhausted state remedies and obtained an invalidation of his rule violation conviction in either state court or federal habeas court.  *Nutter*, 173 Fed. Appx. at 702-03; *Griffin*, 65 Fed. Appx. at 660-61.

Further, "the United States Supreme Court has held that neither negligent nor intentional deprivations of property under color of state law that are random and unauthorized give rise to a § 1983 claim where the plaintiff has an adequate state remedy[.]" *Gillihan v. Shillinger*, 872 F.2d 935, 939 (10th Cir. 1989). Adequate state remedies are not limited to the filing of grievances, but include filing complaints in state court. *See Boles v. Newth*, No. 09-cv-00223, 2009 WL 6057285, at *6 (D. Colo. Nov. 13, 2009) (unpublished); *see also Johnson v. Corr. Corp. of Am.*, No. 08-cv-3230, 2008 WL 4724488, at *9 (D. Kan. Oct. 23, 2008) (unpublished) (finding that inmate's ability to sue for wrongful or negligent loss of personal property in state court constitutes an adequate post-deprivation remedy).

In the instant case, while Plaintiff may have been prohibited from filing grievances due to filing restrictions imposed in response to his abuse of the grievance process, Plaintiff does not allege that he was barred from seeking recourse from this deprivation in state court. Further, a pre-deprivation hearing would be unduly burdensome in proportion to the alleged property interest (*e.g.*, two packs of potato chips, two granola bars, four tea packs, and two boxes of nutty bars) at stake. Moreover, prison restrictions on the type and quantity of personal belongings allowed in a prison cell generally do not impose an atypical and significant hardship. *See, e.g.*, *Cosco v. Uphoff*, 195 F.3d 1221, 1222-25 (10th Cir. 1999) (*per curiam*) (applying the methodology for reviewing restrictions on property and liberty interests set forth in *Sandin v. Conner*, 515 U.S. 472 (1995)); *Thornton v. Hill*, No. 08-575, 2009 WL

2940187, at *8 (W.D. Okla. May 27, 2009) (finding that alleged confiscation of pencils, erasers, batteries, and headphones did not implicate a protected property interest and recommending dismissal of Fourteenth Amendment claim premised thereon) *recommendation adopted, in part, by* 2009 WL 2922957 (W.D. Okla. Sept. 8, 2009). Accordingly, Plaintiff has failed to allege a due process violation arising from the confiscation of certain canteen items.

4.    Alleged Failures to Investigate and/or Respond to Grievances

Plaintiff's Fourteenth Amendment claim also fails to the extent it is premised on Defendants' alleged failures to investigate and/or respond to his grievances.

"A prison official's failure, if any to adequately respond to a prisoner's grievance does not implicate a constitutional right." *Martin, II v. Birch*, No. 09-cv-758, 2010 WL 125002, at *2 (N.D. Okla. Jan. 7, 2010) (unpublished) (citing *Buckley v. Barlow*, 997 F.2d 494, 495 (9th Cir. 1993) (*per curiam*) and *Greer v. DeRobertis*, 568 F. Supp. 1370, 1375 (N.D. Ill. 1983) ("[T]he Fourteenth Amendment does not mandate administrative review of prison disciplinary actions.")); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates.  Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the [F]ourteenth [A]mendment." *Martin, II*, 2010 WL 125002, at *2 (citations omitted) (quoting *Buckley*,

997 F.2d at 495).  Therefore, Plaintiff may not raise a constitutional claim on either Defendant's failure to respond or to respond adequately to his grievances.[22]

5.    Imposition of Grievance Filing Limitations

Finally, the Court will consider whether Plaintiff has a due process claim arising from Defendants' imposition of grievance filing limitations, even though Plaintiff has not explicitly made this a basis for any of his constitutional claims.[23]  For the following reasons, the Court finds that a due process claim arising from the imposition of grievance filing limitations fails.

At the outset, the Court notes that "prison inmates have no federal constitutional right to a grievance procedure while incarcerated."  *McKeighan v. Corr. Corp. of Am.*, No. 08-3173, 2008 WL 3822892, at *4 (D. Kan. Aug. 13, 2008) (unpublished) (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994), *cert. denied*, 514 U.S. 1022 (1995); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991); *Walters v. Corr. Corp. of Am.*, 119 Fed. Appx. 190, 191 (10th Cir. 2004) (unpublished), *cert. denied*, 546 U.S. 865 (10th Cir. 2001).  Further, "the effective management of the detention facility . . . is a valid objective that may justify imposition of conditions and restrictions on pretrial detention and dispel any inference that such restrictions are intended as punishment."  *Bell v.*

---

[22]  Moreover, Plaintiff does not appear to have exhausted his administrative remedies on this issue.  As clearly noted in the CDOC's Administrative Regulation  No. 850-04, if a prisoner does not receive a timely response to his grievance, he "may proceed to the next step within five calendar days of the date the response is due."  IV(I)(1)(d).

[23]  Plaintiff has attached various documents to the Complaint, which exhibit the imposition of such limitations.  (*See* Doc. #113-2 at 5, 35, 36.)

*Wolfish*, 441 U.S. 520, 540 (1979).  Moreover, means by which to manage effectively

a detention facility is "within the province and professional expertise of corrections

officials," not the courts.  *Id.*; *see also Shaw v. Murphy*, 532 U.S. 223, 229-230 (2001).[24]

"When the claim underlying the administrative grievance involves a constitutional

right, the prisoner's right to petition the government for redress is the right of access to

the courts, which is not compromised by the prison's refusal to entertain his grievance."

*Walters*, 119 Fed. Appx. at 191.  In order to state a claim for deprivation of the

fundamental right of access to the courts, a prisoner "must demonstrate an actual injury

that 'hindered his efforts to pursue a legal claim.'" *Garcia v. Lawrence*, 118 Fed. Appx.

436, 439 (10th Cir. 2004) (quoting *Lewis v. Casey*, 518 U.S. 343, 346 (1996)).

In the instant case, Plaintiff's ability to file numerous court actions – none of

which were dismissed for failure to exhaust administrative remedies – belies any

suggestion that his efforts to pursue a legal claim were impeded.  Accordingly, Plaintiff's

Fourteenth Amendment claim fails to the extent it is premised on Defendant's imposition

of grievance filing limitations.

---

[24]  A prison regulation is valid if the following four factors are met: (1) a valid, rational connection
must exist between the prison regulation and the legitimate and neutral governmental interest put forward
to justify it; (2) whether alternative means of exercising the right are available to inmates; (3) the impact
the accommodation of the asserted constitutional right will have on guards and other inmates and on the
allocation of prison resources, generally; and (4) the absence of ready alternatives available to the prison
for achieving the governmental objectives.  *Id.*

**D. FIRST AMENDMENT – RETALIATION AND INHIBITING/PROHIBITING FILING OF GRIEVANCES**

Although not pled with great clarity, Plaintiff appears to allege that Defendants violated his First Amendment rights by interfering with his ability to file grievances and/or lawsuits. In pertinent part, Plaintiff alleges as follows:

- In October 2007, Defendants Scott, Belcher, and Dodge sought to frame Plaintiff in an act of inmate solicitation of staff.[25] In particular, Defendant Belcher sought to "establish[ ] a relationship with [P]laintiff and requested [P]laintiff to write to her," which Plaintiff did and was subsequently "given disciplinary write-up" and forced to plead guilty. (Doc. # 113-1 at 24.)

- Defendants disciplined and harassed Plaintiff on numerous occasions for the filing of grievances, warned Plaintiff in several instances to stop filing grievances, and "deliberately" disciplined Plaintiff for corrections facility rule violations, which Plaintiff contends never occurred. (*Id.* at 24, 26, 32, 35.)

- In July 2008, Defendant Warden Kevin Milyard "ordered"[26] Defendant Major Waide to file a disciplinary report in retaliation for Plaintiff's filing a grievance in connection with Defendant Hardy's alleged sexual abuse of Plaintiff. The report alleged that Plaintiff's grievance against Hardy contained false claims. The charges in the disciplinary report were later dismissed because they were not supported by a "preponderance of evidence." (*Id.* at 26-27; Doc. # 113-2 at 9-10.)

- On November 17, 2008, Defendant Harms "deliberately" found Plaintiff guilty of fraud in an incident where Plaintiff pretended to take medication being distributed in an attempt to keep the medication. (Doc. # 113-1 at 35-36; Doc. # 113-2 at 38-40.)

---

[25] Plaintiff also alleges that Defendant "Soares requested Scott, Belcher, & Dodge to harass [Plaintiff] for his grievance filings" and, accordingly, "Belcher established a relationship with [P]laintiff and requested [P]laintiff to write to her." (Doc. # 113-1 at 24.) Plaintiff's allegation that Soares requested the harassment is speculative and unsubstantiated.

[26] That Defendant Milyard ordered the filing of a disciplinary report is speculative and unsubstantiated and, therefore, cannot survive a motion to dismiss.

- In February 2009, Defendants Starner, Carpenter, and Ummel "came to plaintiffs [sic] cell, handcuffed plaintiff [sic] located civil documents, grievances, etc; tore them up and flushed them down the toilet." (Doc. # 113-1 at 31.)

- Defendants "unconstitutionally restricted" Plaintiff's grievances, in retaliation for Plaintiff's reports of molestation. (*Id.* at 35).

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts. It is well established that officials may not unreasonably hamper inmates in gaining access to the courts." *Smith v. Maschner*, 899 F.2d 940, 948 (10th Cir. 1990). Further, "[t]his principle applies even where the action taken in retaliation would be otherwise permissible . . . retaliation for the exercise of a constitutionally protected right . . . ." *Id.* (internal citations and quotations omitted). "Although retaliation is not expressly discussed in the First Amendment, it may be actionable inasmuch as governmental retaliation tends to chill citizens' exercise of their constitutional rights." *Perez v. Ellington*, 421 F.3d 1128, 1131 (10th Cir. 2005) (internal citation omitted). Whether the plaintiff was actually prevented from filing grievances or lawsuits is irrelevant in a First Amendment retaliation claim. *Zarska v. Higgins*, 171 Fed. Appx. 255, 259 n.3 (10th Cir. 2006) (unpublished).

To state a claim for First Amendment retaliation, the prisoner must allege "specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998); *Joseph v. U.S. Fed. Bureau of Prisons*, No. 00-1208, 2000 WL 1532783, at *2 (10th Cir. Oct. 16, 2000) (unpublished). The "plaintiff must plead facts indicating that he can plausibly prove

three elements at trial: (1) he engaged in constitutionally-protected activity; (2) the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the defendants' actions were substantially motivated by the plaintiff's protected activity." *Magluta v. U.S. Fed. Bureau of Prisons*, No. 08-cv-00404, 2009 WL 1504749, at *3 (D. Colo. May 27, 2009) (unpublished) (citing *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007)). In this context, the Supreme Court has defined "injury" as a hindrance in a prisoner plaintiff's efforts to pursue a legal claim. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). In support of the third element, "[a] plaintiff must allege facts to show that retaliation was the animus behind the defendants' actions[.]" *Magluta*, 2009 WL 1504749, at *3 (citing *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998); *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990)).

In the instant case, Plaintiff alleges, in pertinent part, that certain Defendants retaliated against him for filing grievances in the following ways: (1) confiscated and destroyed legal papers; (2) imposed grievance filing limitations; (3) revoked certain privileges, namely television privileges, prison employment, and canteen items and use of the canteen; (4) "set[ ] Plaintiff up" for disciplinary violations and filed false disciplinary reports; and (5) subjected Plaintiff to sexual molestation and assault, and caused other bodily injury. (*See* Doc. # 113-1 at 24-36.) For reasons discussed in greater detail below, the Court finds that Plaintiff has failed to allege adequately facts to support all three elements of a First Amendment retaliation claim. While Plaintiff has

adequately alleged that he engaged in protected activity, namely filing grievances and lawsuits against Defendants, he has failed to allege adequately that Defendants caused him to suffer an injury or that any retaliation was behind Defendants' purported actions. In sum, Plaintiff's allegations are conclusory, speculative, and highly suspect.

1.  Confiscation and Destruction of "Civil Documents, Grievances, etc."

Plaintiff appears to contend that, in retaliation for his filing of grievances and lawsuits, Defendants Starner, Carpenter, and Ummel came to his cell on a single occasion, located "civil documents, grievances, etc." and "tore them up and flushed them down the toilet." (Doc. # 113-1 at 31.) Plaintiff further contends that these Defendants engaged in this conduct pursuant to orders from Defendant Lt. Carpenter. (*Id.*)

While destruction of legal documents can give rise to a First Amendment retaliation claim,[27] the Court finds Plaintiff's allegations vague, unsupported, and speculative. First, as previously noted, Plaintiff has provided no support for his supposition that Lt. Carpenter ordered certain Defendants to locate and destroy certain documents. Second, beyond general categorization, Plaintiff has failed to identify what documents were destroyed. Moreover, Plaintiff has failed to allege that he was actually injured (*i.e.*, impeded in his efforts to petition the courts for redress of his grievances)

---

[27] *See Purkey v. Green*, 28 Fed. Appx. 736, 746 (10th Cir. 2001) (unpublished) (concluding that the plaintiff's allegations of, in pertinent part, destruction of a complaint that had not yet been filed amounted to a successfully pled First Amendment retaliation claim) (citing *Penrod v. Zavaras*, 94 F.3d 1399, 1404 (10th Cir. 1996)).

by the documents' destruction.[28]  Finally, that Defendants engaged in such conduct in retaliation for Plaintiff's filings is wholly incredible.  In particular, Plaintiff contends that Defendants retaliated against him for filing two lawsuits, namely *Cooper v. Belcher, et. al.* (08-cv-01599)[29] and *Cooper v. Milyard, et. al.* (08-cv-02536),[30] both of which are part of the instant Consolidated Action.  (Doc. # 113-1 at 31.)  However, at least three, and at most seven, months passed between Plaintiff's initiation of those actions and the Defendants' alleged destruction of certain documents in February 2009.  This passage of time seriously undermines Plaintiff's allegation of retaliatory conduct.

Accordingly, in piercing the veil of Plaintiff's Complaint, the Court finds that Plaintiff's allegation of retaliatory destruction of certain documents is frivolous.  Accordingly, this aspect of Plaintiff's First Amendment claim fails.

2.     Retaliatory Imposition of Grievance Filing Restrictions

Plaintiff's First Amendment claim also fails to the extent it is premised on the imposition of grievance filing restrictions.  The documents attached to the Complaint undermine Plaintiff's allegations of a retaliatory motive.

The documents attached to the Complaint indicate that the restrictions were imposed because of Plaintiff's repeated abuse of the grievance process.  (*See* Doc. # 113-2 at 4, 5, 27, 35, and 36.)  Plaintiff's contentions concerning the retaliatory nature

---

[28]  Plaintiff would be hard-pressed to assert such an injury in light of his prowess at filing numerous related lawsuits in this District.

[29]  The Complaint in Case No. 08-cv-01599 was filed on July 29, 2008.

[30]  The Complaint in Case No. 08-cv-02536 was filed on November 21, 2008.

of the restrictions are conclusory and speculative.  Further, Plaintiff has not alleged

prejudice in his ability to access the courts.  Accordingly, this basis for Plaintiff's First

Amendment claim also fails.  *See Hornsby v. Jones*, 188 Fed. Appx. 684, at *13-*14

(10th Cir. June 26, 2006) (unpublished) (affirming dismissal of retaliation claim based on

grievance restrictions where plaintiff abused the grievance filing process); *see also*

*Brown v. Sales*, No. 97-6118, 1998 WL 42527, at *6 (10th Cir. Feb. 4, 1998)

(unpublished) (affirming lower court's finding that retaliation claim was conclusory).

       3.    Retaliatory Revocation of Privileges

      The Tenth Circuit has held that prison officials may not impose sanctions upon

an inmate merely for exercising his constitutional right to free speech.  *See generally,*

*Gandy v. Ortiz*, 122 Fed. Appx. 421 (10th Cir. 2005) (unpublished).  However, Plaintiff's

factual allegations and the documents attached to his Complaint do not support the

conclusion that he lost certain privileges for the act of filing grievances or initiating

lawsuits against Defendants.  Rather, as previously discussed, the exhibits attached to

the Complaint indicate that Plaintiff lost certain privileges because he had been found in

violation of certain rules of the corrections facility.

      "Although a reduction of privileges may support a claim of retaliation, to proceed

on such a theory, a plaintiff must allege sufficient facts showing that the reduction would

not have occurred *but for* the inmate's exercise of his constitutional right."  *Sherratt v.*

*Friel*, No. 07-cv-00551, 2009 WL 4981691, at *5 (D. Utah Dec. 11, 2009) (unpublished).

In the instant case, neither Plaintiff's allegations nor the attached exhibits support a

"but for" causation.  Thus, Plaintiff's First Amendment claim also fails to the extent it is premised on a revocation of certain privileges.

4.    Retaliatory Filing of a Disciplinary Report

Plaintiff's First Amendment retaliation claim also fails to the extent that it is premised on the filing of a disciplinary report, which was later determined to be unsupported by a preponderance of the evidence.  As previously discussed, prisoners have no constitutional protections for being falsely or wrongly accused of conduct which may result in the deprivation of certain liberty interests provided that the prisoner is afforded due process.  *See Wolff v. McDonnell*, 418 U.S. 539, 571 (1974); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986).  An "inmate must allege more than his *personal belief* that he is the victim of retaliation."  *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (emphasis added).

In the instant case, Plaintiff alleges that Defendant Waide filed a false disciplinary report against Plaintiff in retaliation for his grievance filings.  (Doc. # 113-1 at 27; Discipline Report/Notice of Charges at Doc. # 113-2 at 9.)  However, Plaintiff was afforded a hearing and Defendant May ultimately found that a "preponderance of the evidence" did not support the charges in the Report.  (*Id.* at 10.)  Most importantly, Plaintiff has failed to allege facts that show retaliation was the motivation behind Defendant Waide's filing.  Plaintiff's allegations are merely speculative.[31]  Accordingly, Plaintiff's First Amendment retaliation claim based on the disciplinary report fails.

---

[31]  Plaintiff's allegation that Defendants Scott, Belcher, and Dodge "set [him] up" for a disciplinary violation is also entirely speculative and fails to support his retaliation claim.

5. <u>Retaliatory Sexual Assault/Molestation</u>

As previously discussed in connection with Plaintiff's Eighth Amendment claim, the veracity of Plaintiff's sexual assault and molestation allegations is undermined by the multitude of disparately located defendants whom Plaintiff has implicated over a broad period of time. Having already determined that Plaintiff's sexual assault and molestation claims fail because they are frivolous and malicious, the Court also finds that Plaintiff's retaliation claim premised thereon similarly fails.

**E. IMMUNITY**

Having found that all of Plaintiff's claims lack merit and, therefore, warrant dismissal, the Court need not address whether principles of immunity bar Plaintiff's claims against Defendants.

**V. CONTINUED PATTERN OF FILING CUMULATIVE AND
FRIVOLOUS ACTIONS AT NEW FACILITY**

In June 2009, Plaintiff was transferred from the Sterling Correctional Facility to the Colorado State Penitentiary. (*See* Case No. 09-cv-02219, Doc. # 3 at 6.) Since that transfer, Plaintiff has filed no less than thirteen prisoner complaints (the "Colorado State Penitentiary Actions"), nine of which were either voluntarily dismissed, dismissed due to Plaintiff's failure to prosecute, dismissed due to duplicity with other filed actions, or dismissed on grounds of maliciousness. Each of these thirteen actions asserts similar claims as those raised in the underlying Sterling Actions (*e.g.*, retaliation, sexual assault and molestation). Further, several of these claims are conclusory and speculative in much the same way as the instant Consolidated Action, several of the defendants have

been named in more than one action, and the actions cover overlapping time periods. The following Colorado State Penitentiary Actions are still pending: Case Nos. 09-cv-02965, 10-cv-00025, 10-cv-00560, and 10-cv-00716. A chart setting forth the defendants, asserted claims, and status of these Actions is available at Appendix C.

Once again, the Court exercises its discretion to pierce the veil of these complaints and finds that the veracity of the asserted claims is highly suspect, given the multitude of implicated defendants and the similarity of the allegations to those made in the Sterling Actions. Further, the attached documents fail to support Plaintiff's claims. Accordingly, the Court finds that these Actions are malicious in nature and, as a sanction pursuant to Fed. R. Civ. P. 41(b) and 28 U.S.C. § 1915(e)(2)(B)(i), dismissal with prejudice of these Actions is appropriate. *See Denton v. Hernandez*, 504 U.S. 25, 29 (1992) (holding that a court may properly dismiss a suit as malicious under section 1915(e) where a plaintiff has already engaged in a multitude of identical or closely similar suits); *see also Stine v. Lappin*, No. 07-cv-01839, 2009 U.S. Dist. LEXIS 78373, at *48 (D. Colo. June 25, 2009), *adopted by* 2009 WL 2848849 (D. Colo. Sept. 1, 2009) (imposing sanctions in light of the plaintiff's extensive history of filing frivolous and malicious pleadings despite numerous court warnings and admonishments).

## A.     DISMISSAL AS A SANCTION

"[A] court has authority to impose the sanction of dismissal for failing to follow procedural rules . . . and for failing to obey court orders." *Lynn v. Roberts*, No. 01-3422, 2006 WL 2850273, at *6 (D. Kan. Oct. 4, 2006). As stated by the Tenth Circuit,

> Before choosing dismissal as a just sanction, a court should ordinarily consider a number of factors, including: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions. Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction.

*Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992) (internal quotations and citations omitted) (affirming dismissal with prejudice where the plaintiff "knew of the potential consequences of his actions"). "[I]n cases in which a party appears *pro se*, the court should carefully assess whether it might appropriately impose some sanction other than dismissal, so that the party does not unknowingly lose its right of access to the court because of a technical violation." *Id.* at n.3. However, a plaintiff's *pro se* status does not excuse his abuses. *See Garrett v. Selby Connor Maddux & Janner*, 425 F.3d 836, 841 (10th Cir. 2005) (citing *Theriault v. Silber*, 579 F.2d 302 (5th Cir. 1978)); *see also Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986) (*pro se* litigants have "no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets").

In the instant case, all the *Ehrenhaus* factors weigh strongly in favor of dismissal as a sanction. First, the Colorado State Penitentiary Defendants have been prejudiced by having to expend resources on Plaintiff's malicious and unsupported allegations, not to mention the harm suffered by being publicly accused of lascivious conduct, which allegations are highly suspect.

Second, Plaintiff's continuous and willful filing of cumulative, conclusory, speculative, and frivolous and malicious pleadings, in direct contravention of court orders, has, without question, interfered with the judicial process, and vexatiously and unnecessarily multiplied the proceedings. Plaintiff's repeated defiance of court orders and rules, along with his incessant need to abuse the *in forma pauperis* statute with his highly suspect allegations of sexual abuse and retaliation against a widening array of corrections employees and law enforcement officials has interfered with "one of the principal purposes of our court systems – to provide a safe, effective forum for resolving disputes that is characterized by civility." *Lynn,* 2006 WL 2850273, at *7. Accordingly, the second *Ehrenhaus* factor is satisfied.

The third and fourth *Ehrenhaus* factors, the litigant's culpability and court warnings in advance of dismissal, are satisfied. As already discussed, Plaintiff has received multiple warnings that his conduct could result in dismissal of his lawsuit, without any further warning. (*See* Doc. # 94 at 2, Doc. # 143 at 4.) Further, all of the Colorado State Penitentiary Actions were filed after Plaintiff received his first warning in May 2009, and most of these Actions were filed after Plaintiff received his second warning in September 2009. Nevertheless, as clearly established by the foregoing, Plaintiff continues to file non-comporting and highly suspect documents.

Finally, in light of Plaintiff's above-described egregious behavior, the Court finds that no sanctions less than outright dismissal, with prejudice, of the Colorado State Penitentiary Actions would be effective or meaningful to Plaintiff. As with the plaintiff in

*Ehrenhaus*, Mr. Cooper was well-aware of the consequences he faced if he continued to violate orders and rules. Accordingly, the fifth *Ehrenhaus* factor is satisfied.

Based on the foregoing, Plaintiff's actions have been willful, intentional, persistent, frivolous, and contemptuous. Therefore, in separate, contemporaneously issued dispositive orders, which will be issued under the caption of each case, the following Colorado State Penitentiary Actions are dismissed with prejudice: Case Nos. 09-cv-02965, 10-cv-00025, 10-cv-00560, and 10-cv-00716.

## VI. IMPOSITION OF PROSPECTIVE FILING RESTRICTIONS

In light of Plaintiff's well-established history of filing frivolous, malicious, and duplicative actions against numerous corrections facility employees and other law enforcement officials, this Court finds that the imposition of filing restrictions are warranted.

Accordingly, in a contemporaneously-issued Order under the above caption, the Court imposes prospective filing restrictions on Plaintiff. (Doc. # 199.) As set forth in that Order, Plaintiff will have until no later than September 7, 2010, to file any written objections to the proposed filing restrictions. In the absence of timely objections, the filing restrictions shall take effect on September 10, 2010. If Plaintiff does file timely objections, the restrictions shall not take effect until the Court rules on the objections. Therefore, for these purposes, this Court will retain jurisdiction over this matter until the Court has either imposed the filing restrictions and/or addressed Plaintiff's timely-filed objections.

## VII.  CONCLUSION

Accordingly, for the foregoing reasons IT IS ORDERED THAT:

(1)     The claims against Defendants Marie Leiba and Brian Webster are DISMISSED due to Plaintiff's failure to arrange timely service of the Complaint;

(2)     Plaintiff's Request for Court Order/Minute Order for Defendants Webster & Leiba to Be Served (Doc. # 189) is DENIED AS MOOT and UNTIMELY;

(3)     The following Motions filed by Plaintiff for permission to proceed with new actions are DENIED AS MOOT, because Plaintiff has already filed the new actions, without the Court's permission[32]:

   (a)     Doc. # 163
   (b)     Doc. # 168
   (c)     Doc. # 177
   (d)     Doc. # 180
   (e)     Doc. # 183
   (f)     Doc. # 184
   (g)     Doc. # 186
   (h)     Doc. # 191
   (i)     Doc. # 192
   (j)     Doc. # 194
   (k)     Doc. # 195
   (l)     Doc. # 196

(4)     Plaintiff's Motion (requesting sanctions against Defendants Leiba and Webster due to their failure to answer or otherwise respond to the Complaint) (Doc. #181) is DENIED AS MOOT;

(5)     Plaintiff's Motion/Request for Court Order for Legal Photo Copies (Doc. #188) is DENIED AS MOOT;

(6)     Defendants' Motions to Dismiss (Doc. ## 125, 145) are GRANTED and Plaintiff's claims are DISMISSED WITH PREJUDICE;

---

[32]  Despite requesting court permission, Plaintiff has initiated the following actions: Case No. 09-cv-02965; 08-cv-01599; 10-cv-00361; 10-cv-00522 (re-filed as 10-cv-00560); 10-cv-00716; 10-cv-00560; 10-cv-00978

(7)   The following closely similar actions are dismissed with prejudice as a
      sanction under Fed. R. Civ. P. 41(b) and 28 U.S.C. § 1915(e)(2)(B)(i):

      • 09-cv-02965
      • 10-cv-00025
      • 10-cv-00560
      • 10-cv-00716

      Separate dispositive orders will be issued under the caption of each of
      those cases; and

(8)   Pursuant to the contemporaneously-issued Order concerning filing
      restrictions (Doc. # 199), the Court will retain jurisdiction over this matter
      until it has imposed the filing restrictions and/or addressed Plaintiff's
      timely-filed objections.

DATED:  August __24__, 2010

                                    BY THE COURT:

                                    _____
                                    CHRISTINE M. ARGUELLO
                                    United States District Judge

## APPENDIX A

## Plaintiff's Frivolous Motions in Consolidated Case No. 08-cv-01599

| Date/Docket No. | Plaintiff's Request | Disposition |
|---|---|---|
| 11/14/2008; Doc. #24 | Interlocutory injunction (to stop Defendants from preventing him from filing grievances, which Defendants have deemed frivolous)<br><br>Alleged conduct occurred between August-October 2008. | Denied. Within a 60-day period, Plaintiff filed 28 grievances that the prison deemed frivolous. Despite written notice of an imposed grievance restriction, Plaintiff filed another 14 grievances in a 10-day period.<br><br>*See* Doc. ##40, 143 (finding that motion utterly lacked merit) |
| 12/17/2008; Doc. #35 | Interlocutory Injunction (to direct Defendants to deposit monies owed into Plaintiff's account and to stop Defendants from preventing Plaintiff from sending out legal mail)<br><br>Alleged conduct occurred in October and December 2008. | Denied. Finding Plaintiff unlikely to prevail in his claim, given the evidence presented by Defendant that Plaintiff is neither owed the disputed amount nor are the addressees of the mail at issue Plaintiff's counsel of record.<br><br>*See* Doc. ##63, 143 (finding that motion utterly lacked merit) |
| 12/19/2008; Doc. #37 | Emergency Temporary Restraining Order (to stop Defendants from preventing him from sending out legal mail)<br><br>Alleged conduct occurred in December 2008. | Denied. Envelope attached in support of Plaintiff's request was marked "not legal mail".<br><br>*See* Doc. ##40, 143 (finding that motion utterly lacked merit) |
| 2/24/2009; Doc. #55 | Interlocutory Injunction (to stop Defendants from preventing him from sending out legal mail)<br><br>Alleged conduct occurred in February 2009. | Denied. The mail at issue does not appear to be related to Plaintiff's civil action against Defendants.<br><br>*See* Doc. ##74, 143 (finding that motion utterly lacked merit) |

| 7/17/2009; Doc. #124 | Interlocutory Injunction (to stop retaliation against Plaintiff for his filing of lawsuits and grievances against Defendants)<br><br>Alleged conduct occurred in June 2009. | Denied.  Plaintiff failed to address any of the four factors required to obtain injunctive relief.<br><br>*See* Doc. #136, 143 (finding that motion utterly lacked merit) |
|---|---|---|
| 9/10/2009; Doc. #141 | Interlocutory Injunction (to stop Defendants from obstructing his legal mail).<br><br>Alleged conduct occurred in August 2009. | Denied.  Plaintiff's allegations were vague and unsupported.<br><br>*See* Doc. #143 (finding that motion utterly lacked merit) |

**APPENDIX B**

**UNDERLYING STERLING ACTIONS: OPERATIVE DATES, DEFENDANTS, AND ALLEGATIONS**

| Date Plaintiff Executed *In Forma Pauperis* Motion | Case No. | Defendants | Alleged Conduct/ Period of Alleged Conduct |
|---|---|---|---|
| July 20, 2008 | 08-cv-01599 (consolidated) | Sgt. Rhonda Belcher, Lt. Bernadette Scott, Sgt. Dodge, Assoc. Warden Carol Soares | Harassment, sexual molestation, and sexual assault; retaliatory filing of discipline reports; inhibiting and/or prohibiting Plaintiff from filing grievances. |
| October 21, 2008 | 08-cv-02536 (consolidated) | Warden Kevin Milyard, Corrections Officer Hardy, Major Lloyd Waide, Corrections Officer Nicholas Haney | Sexual molestation; retaliatory punishment; confiscation of personal property without due process. |
| March 12, 2009 | 09-cv-00662 (consolidated) | Starner, Carpenter, Ummel | Sexual molestation and inhibition/prohibiting Plaintiff from filing grievances/Mid-to-late 2008 through March 2009. |
| March 15, 2009 | 09-cv-00667 (consolidated) | Logan, Leiba, May, Negley, Milyard | Conspiring to fire Plaintiff from his job and filing false conduct report; prohibiting Plaintiff from filing grievances/Late 2007 - March 2008. |
| March 22, 2008 | 09-cv-00754 (consolidated) | Edelen, Canield, Gomez, Jenkins, Carpenter, and Manning | Sexual molestation and Inhibiting/prohibiting Plaintiff from filing grievances/September 2008. |

| April 16, 2009 | 09-cv-00961 (consolidated) | Webster, Fortunato, Dowis, Larson, Chapdelaine, Milyard, and Harms | Harassment and sexual molestation; filing false disciplinary report against Plaintiff; inhibiting and/or prohibiting Plaintiff from filing grievances. |
| --- | --- | --- | --- |

## APPENDIX C

## COLORADO STATE PENITENTIARY ACTIONS: OPERATIVE DATES, DEFENDANTS, AND ALLEGATIONS

| Date Plaintiff Executed *In Forma Pauperis* Motion | Case No. | Defendants* *names in bold have been named in multiple actions | Alleged Conduct/Period of Alleged Conduct | Status of Case |
|---|---|---|---|---|
| on or around 8/7/2009 | 09-cv-01871 | **Lt. Heidenthal**, Corrections Officer Johnson, Sgt. West, and **Warden Jones** | Unknown; Actual complaint never filed | Dismissed due to Plaintiff's failure to cure deficiencies. |
| 8/28/2009 | 09-cv-02218 | Sgt. Roberts, **Warden Susan Jones**, J. Dalton, **Carl Holditch**, R. Manning, Anthony DeCesaro, Corrections Officer Goudeau, and Sgt. Padilla, and **Lt. Heidenthal** | Harassment, sexual molestation, and sexual assault; grievance filing limitations; failure to investigate grievances/July 2008 - August 2009 | Voluntarily dismissed. |
| 8/26/2009 | 09-cv-02219 | **Sgt. Binder, Warden Jones, Corrections Officers Vialaprando and Simmons; Lt. Chavez** | Harassment, sexual molestation, and sexual assault; retaliatory confiscation of Plaintiff's legal documents and revocation of certain privileges/ June 2009-July 2009. | Voluntarily dismissed. |

| | | | | |
|---|---|---|---|---|
| 12/10/09 | 09-cv-02965 | **Sgt. Binder, Warden Jones, Corrections Officers Vialaprando and Simmons**; and **Lt. Chavez** | Harassment, sexual molestation; revocation of certain privileges; destruction of legal documents/July 2009 | Still pending. |
| 12/21/09 | 10-cv-00025 | Corrections Officers Finnigan and D Trujillo; **Major Holditch**, and Lt. Martz | Harassment, sexual molestation; confiscation of legal materials; denying Plaintiff sleep; interference with Plaintiff's grievance filings/ October 2009- November 2009. | Still pending. |
| 2/8/10 | 10-cv-00361 | Corrections Officers Rebeterano, Elizardo, and Romero; Captain Dalton | Unknown; actual complaint never filed | Dismissed due to Plaintiff's failure to cure deficiencies. |
| 2/21/10 | 10-cv-00522 | Corrections Officers Archeletta, Duty, Thomas, Lombardo, **Vialaprando,** Demille, Kenitzer, and Kristen; Case Manager Beard, Captain Huertas, **Associate Warden Allan, Lt. Chavez,** Sgt. Meyer, and **Warden Jones** | Unknown; actual complaint never filed | Dismissed due to Plaintiff's failure to cure deficiencies. |

| | | | | |
|---|---|---|---|---|
| 2/25/10 | 10-cv-00560 **(re-filing of 10-cv-00522)** | **Corrections Officers Archeletta**, Duty, Thomas, Lombardo, **Vialaprando**, Demille, Kenitzer, and Kristen; Case Manager Beard, Captain Huertas, Associate Warden Allan, **Lt. Chavez**, Sgt. Meyer, and **Warden Jones** | Harassment, sexual molestation, and sexual assault; retaliatory termination of Plaintiff from his prison job; retaliatory interference with Plaintiff's grievance filings/ June 2009-February 2010 | Still pending. |
| 3/15/10 | 10-cv-00716 **(a re-filing of 09-cv-02218)** | Sgt. Roberts, **Warden Susan Jones**, J. Dalton, **Carl Holditch**, R. Manning, Anthony A. DeCesaro, Corrections Officer Goudeau, Sgt. Padilla, and Lt. Heidenthal | Harassment, sexual molestation, and sexual assault; grievance filing limitations; failure to investigate grievances/July 2008 - August 2009 | Still pending. |
| 4/16/10 | 10-cv-00978 | Lt. Burke, **Assoc. Warden Allen, Warden Susan Jones**, Lt. J. Pacheco, **Lt. Chavez**, and **Corrections Officer P. Archuleta** | Sexual molestation; retaliatory confiscation of legal documents; improperly finding Plaintiff guilty of prison rule violations; interference with Plaintiff's grievance filings/ February 2010-April 2010 | Dismissed because claims are repetitive of claims in other filed actions. |
| 6/24/10 | 10-cv-01610 | c/o L. Vigil | Sexual assault | Dismissed because claims are repetitive of claims in another filed action. |

| 7/18/10 | 10-cv-01823 | **Lt. Dale Burke, Lt. J. Pacheco,** Case Manager Carmen Estrada | Retaliatory interference with Plaintiff's grievance filings; improperly finding Plaintiff guilty of prison rule violations | Dismissed on grounds of maliciousness. |
|---------|-------------|---------------------|------------------|------------------|
| 7/18/10 | 10-cv-01824 | Sgt. C. Pool, c/o R. Cooper | Sexual assault | Dismissed on grounds of maliciousness. |